UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| DEBRA J REAGAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:14-cv-00059-GZS |
| | ) | |
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| *et als.,* | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION AND ORDER**

In this action, Plaintiff Debra J. Reagan asserts claims against, *inter alia*, Defendants U.S.

Bank National Association, BAC Home Loan Servicing, LP, and MERS Inc.  Plaintiff's Complaint

arises out of a Maine District Court foreclosure proceeding in which proceeding the court entered

judgment of foreclosure in favor of U.S. Bank N.A., as Trustee on Behalf of Sail 2006-3 Trust

Fund.  The Maine Supreme Judicial Court affirmed the judgment on appeal in a memorandum of

decision issued December 24, 2013.  The matter is before the Court on the following motions:[1]

> Motion to Dismiss of BAC Home Loan Servicing LP, Kimberly Dawson, Jorge
> Vargas, and Jill Wosnak (ECF No. 35);
>
> Motion to Dismiss of U.S. Bank N.A., Jan Estep, and MERS Inc. (ECF No. 42);
>
> Plaintiff's Motions to Find Defendants' Motions to Dismiss Are Not Responsive
> Pleadings (ECF Nos. 38 & 43);
>
> Plaintiff's Motion to Have Defendant Jorge Vargas' Attorney Answer Clarification
> Request on the Record (ECF No. 34);
>
> Plaintiff's Motion for Entry of Default as to Maria Ramos (ECF No. 61); and

---

[1] The Court referred the motions.

Plaintiff's Motion to Reconsider Plaintiff's Requested Summary Judgment re 63
Order Deferring Ruling on Motion for Default Judgment (ECF No. 64).

After a review of the pleadings, and after consideration of the parties' arguments, as explained below, because Plaintiff's claims and request for relief in essence would require this Court to engage in a direct review of a state court judgment, this Court cannot grant Plaintiff the relief that she seeks. The recommendation, therefore, is that the Court grant the motions to dismiss, and deny Plaintiff's motion for default judgment or summary judgment against Maria Ramos.

In addition, as discussed below, Plaintiff's argument that Defendants' motions to dismiss are non-responsive pleadings is not persuasive, and Plaintiff's motion seeking an answer clarification is moot.

## BACKGROUND FACTS

The facts set forth herein are derived from Plaintiff's Complaint, which facts are deemed true when evaluating the Motion to Dismiss.[2] *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998). In addition, the Court can also consider documents whose authenticity is not disputed, public records, documents central to Plaintiff's claim, and documents sufficiently referred to in the complaint. *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).[3]

Plaintiff complains of events beginning with the "initiation of foreclosure case on November 25, 2009 . . . to the final Maine Supreme Court ruling." (Verified Amended Complaint, Stmt. of Claims ¶ 1, ECF No. 9.) As to the foreclosure proceedings, Plaintiff alleges that:

---

[2] The reference to the facts as alleged should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

[3] Because Defendants' jurisdictional challenge based on prior state court judgments of which the Court can take judicial notice is also a "sufficiency challenge," *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001), this approach governs the Court's consideration of both Defendants' subject matter jurisdiction challenge and its contention that Plaintiff has failed to state a claim upon which relief can be granted.

- The Maine District Court violated her right to due process by denying discovery before trial, though it had ordered certain pre-trial discovery;

- The Maine Supreme Judicial Court ("Law Court") violated her right to due process by not finding that the Maine District Court violated her right to due process;

- The Law Court violated equal protection by applying a different rule of law to her case than it did in cases where the debtor was represented by counsel; and

- The state courts violated her right to trial by jury.

(*Id.* ¶ 2(1)-(6).)

Plaintiff also alleges violations of law by private parties (the named defendants and Countrywide Home Loans) prior to and in connection with the foreclosure proceeding. Plaintiff asserts that:

- Countrywide Home Loans, Inc., violated section 5 of the Federal Trade Commission Act by telling her that she had to be 90 days in arrears to qualify for loan modification under HAMP, thereby inducing her default;

- Countrywide violated the Truth in Lending Act by predatory/subprime lending in refinancing her home in January 2006;

- Countrywide and Bank of America Home Loans violated the Consumer Protection Act by wrongfully denying a loan modification under HAMP.

- Countrywide and Bank of America Home Loans violated the Consumer Protection Act or committed land record fraud through robo-signing which resulted in false court affidavits, pleadings, recording false documents in the York County Registry of Deeds, and monetary harm and emotional injury;

- MERS misrepresented itself as mortgagee and improperly assigned and made false representations concerning the assignment of her mortgage;

- MERS, Bank of America and US Bank violated the trust fund prospectus and certain Internal Revenue Code requirements in the transfer of her promissory note and mortgage deed, making the transfers void and the MERS assignment to US Bank (or Bank of America), dated October 16, 2007, invalid;

- US Bank wrongly foreclosed based on its lack of standing and also because certain "default insurances and/or credit default swaps" meant that Plaintiff was not in default.

(*Id.* ¶ 2(7)-(16).)

Plaintiff asserts that this Court has subject matter jurisdiction because her claims arise under the Constitution and federal laws, including civil rights law, and based on diversity of citizenship and an amount in controversy in excess of $75,000.  (*Id.*, Stmt. of Jurisdiction.)  For relief, Plaintiff requests the following:

> Provide me my constitutional right to due process of law that has been denied me by the lower courts in Maine and give me proper discovery and provide an unbiased and fair trial through a trial by jury.  To also provide protection of my constitutional right to not be deprived of my property without due process of law by issuing an injunction or stay of any Writ of Possession Order by any other court until this case in final.

(*Id.*, Relief.)

## DISCUSSION

Through their motions, Defendants request dismissal of Plaintiff's action based on the *Rooker-Feldman* doctrine.  In opposition to the motions, Plaintiff contends, in part, that Defendants' motions are not proper responses to her Amended Complaint and that the Court should declare Defendants to be in default.

**A.      Defendants' Motions to Dismiss**

Preliminarily, Plaintiff requests that the Court find that the moving defendants' motions to dismiss are not responsive pleadings to her Complaint.  (ECF Nos. 38 & 43.)  Plaintiff contends that a motion to dismiss is not a responsive pleading under the Federal Rules of Civil Procedure because a motion is not considered a pleading.  Plaintiff, therefore, maintains that Defendants are in default.

Contrary to Plaintiff's argument, under the applicable rules, certain defenses may be interposed by motion and "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b).  Defendants' motions, by which they assert the Court's lack of subject matter

jurisdiction and Plaintiff's failure to state a claim upon which relief can be granted, are within the scope of the defenses that a party can assert by way of a motion. Defendants thus are not in default. Accordingly, Plaintiff's request for the entry of default against the Defendants is denied.

      **1.**        **The *Rooker/Feldman* doctrine**

      Under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to provide Plaintiff with the relief that she requests with respect to the state court proceedings and the state court judgment of foreclosure.

> The *Rooker-Feldman* doctrine prohibits federal courts other than the Supreme Court from engaging in direct review of state court decisions. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16 (1923). A corollary of the *Rooker-Feldman* doctrine is that lower federal courts lack jurisdiction to consider claims inextricably intertwined with review of state judicial proceedings. This kind of interrelationship occurs if resolution of the claims in federal court would amount to federal appellate review of the state court decision. *Lancellotti v. Fay,* 909 F.2d 15, 17 (1st Cir. 1990).

*Edwards v. City of Manchester*, 121 F.3d 695 (1st Cir. 1997) (unpublished). The *Rooker-Feldman* doctrine means "in a nutshell that a federal court below the United States Supreme Court does not have jurisdiction over a claim that seeks in essence to overturn a state court judgment." *Bradbury v. GMAC Mortg., LLC*, 780 F. Supp. 2d 108, 113 (D. Me. 2011). When it comes to reviewing and setting aside state court judgments, "28 U.S.C. § 1257 vests the United States Supreme Court with exclusive jurisdiction." *Silva v. Massachusetts*, 351 Fed. App'x 450, 454 (1st Cir. 2009). Consequently, this Court lacks jurisdiction to grant relief that would effectively overturn a state court judgment. As summarized by the United States Supreme Court, the *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district

court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The Supreme Court has identified four factors that govern the applicability of the *Rooker-Feldman* doctrine. The case must be brought by a party who lost in state court, *id.*; the party must complain of injuries caused by the state-court judgment, *id.*; the state court judgment must have been rendered before commencement of the federal claim, *id.*; and the federal litigation must invite the district court to review and reject the state court judgment, *id. See Silva*, 351 Fed. App'x at 454.

Insofar as the gravamen of Plaintiff's case is the adverse result in the state court foreclosure proceeding, the first two factors are satisfied. Plaintiff complains that the Maine District Court's judgment of foreclosure, and the Law Court's affirmation of the judgment on appeal violated her constitutional rights. Plaintiff in part asserts that the Law Court applied a different rule of law in her case, when compared with cases involving counseled debtors, allegedly in violation of the Equal Protection Clause. Plaintiff's claim is thus a direct attack on the state court judgment in her particular case.[4]

The third requirement (i.e., that the state court judgment was entered before commencement of the federal litigation) is also satisfied. "[W]hen the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, then without a doubt the state court proceedings have 'ended.'" *Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 24 (1st Cir. 2005). The Law Court's Memorandum

---

[4]   A claim of denial of equal protection by a court in the course of judicial proceedings generates an issue for appeal and, moreover, should be addressed to the court itself in the first instance. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983).

of Decision is dated December 24, 2013.  (ECF No. 35-7.)  Plaintiff commenced this action on February 14, 2014.

Finally, Plaintiff is plainly requesting that this Court review and reject the state court judgment.  In fact, not only is Plaintiff asking this Court to invalidate the state court judgment, but she requests that the Court enjoin the state from issuing the writ of possession that is authorized by the state court judgment.  The relief requested by Plaintiff demonstrates that Plaintiff is asking this Court to provide a new proceeding that would supplant the judgment of the state court.  As in *Silva*, the requested relief runs directly counter to the *Rooker-Feldman* doctrine.  *Silva*, 351 Fed. App'x at 455-56. [5]

In sum, for the Court to award Plaintiff the remedy that she desires, and to make that remedy enforceable, the Court would have to invalidate the state court judgment of foreclosure. While the state trial courts can revisit a judgment under certain circumstances,[6] the only federal court with authority to review a state court judgment is the United States Supreme Court.  Simply

---

[5] In her opposition to the BAC Defendants' Motion to Dismiss, Plaintiff asserts that she "is not asking this court to review the state of Maine's courts' decisions to re-litigate the issues," but rather "is asking for this court to determine that when the state courts decided the foreclosure case, Plaintiff's due process of law, constitutional rights and federal laws were violated during the process" so that "the very issues that were previously addressed in the state courts have to be reviewed." (ECF No. 46 at 2; *see also* ECF No. 47 at 5 (incorporating this argument).)  Regardless of whether Plaintiff's request is described as appellate review, she seeks an order that would nullify the state court judgment and replace it with a judgment by this Court following a trial on the merits of US Bank's foreclosure claim.  That is precisely the sort of relief that the *Rooker-Feldman* doctrine prohibits.

[6] Maine Rule of Civil Procedure 60(b) provides a means by which a litigant can seek relief from a state court judgment. The Rule in part provides:

> [T]he court may relieve a party or the party's representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic); (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed, or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

This Recommended Decision is not intended to comment on, and should not be construed to comment on the merit of any such motion that might be based on Plaintiff's assertions in this case.

stated, this Court does not have the authority to provide Plaintiff the relief she requests.  *See, e.g.,*
*Pease v. First Nat. Bank*, 335 Fed. App'x 412, 415 (5th Cir. 2009); *Postma v. First Fed. Sav. &*
*Loan of Sioux City*, 74 F.3d 160, 162 (8th Cir. 1996); *United States v. Shepherd*, 23 F.3d 923, 924
(5th Cir. 1994); *In re Schmid*, 494 B.R. 737, 749 (Bankr. W.D. Wis. 2013), *appeal dismissed,* 498
B.R. 221 (W.D. Wis. 2013); *Scott v. Capital One, Nat. Assocs.*, No. 7:12-cv-00183, 2013 WL
1655992, at *2-4 (S.D.N.Y. Apr. 17, 2013); *Lanier v. Branch Bank & Trust*, No. 3:12-cv-00416,
2013 WL 1194729, at *4 (D. S.C. Mar. 22, 2013); *Brooks v. Flagstar Bank, FSB*, No. 2:11-cv-
00067, 2011 WL 2710026, at *2-4 (E.D. La. July 12, 2011).[7]

### 2.        The *Skinner v Switzer* exception

In *Skinner v. Switzer*, the Supreme Court explained that a claim challenging the
constitutionality of a state law or rule governing a decision is not barred by the *Rooker-Feldman*
doctrine. __ U.S. __, 131 S. Ct. 1289, 1298 (2011).  Plaintiff, therefore, could conceivably assert
a constitutional claim against the state court (rather than the named defendants) in which she
challenged the constitutionality of Maine's foreclosure process based on her assertion regarding
the failure of the state system to provide a jury trial in foreclosure actions.  Because Plaintiff has
not named the proper defendant or complied with the service requirements applicable to such an
action, Plaintiff cannot pursue that claim in this action.

---

[7]  Some circuit courts of appeals have recognized an exception to the *Rooker-Feldman* doctrine for collateral attacks
on state court judgments if the state court judgment was procured through fraud.  *In re Sun Valley Foods Co.*, 801
F.2d 186, 189 (6th Cir. 1986) (citing *Resolute Ins. Co. v. State of N. Carolina*, 397 F.2d 586, 589 (4th Cir. 1968)).  A
review of Plaintiff's state court pleadings reflects that she presented her fraud arguments to the state court.  (See, e.g.,
ECF No. 65-1.)  "Fraud on the court does not occur simply because a court is unpersuaded by a party's allegation of
fraud."  *Velazquez v. S. Florida Fed. Credit Union*, 546 F. App'x 854, 859 (11th Cir. 2013).  Moreover, the alleged
fraud(s) are based on Plaintiff's arguments regarding standing to foreclose, the legitimacy of assignments of the note
and mortgage, and whether default was prevented by operation of "default insurances and/or credit default swaps."
All of these arguments present questions of state law appropriately addressed to the state courts in the context of the
state foreclosure proceeding.

Additionally, any such claim that Plaintiff would assert would be futile.  The right to a jury trial under the Seventh Amendment to the United States Constitution is a requirement in federal proceedings, but not in state proceedings.  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 418, 432 (1996) ("The Seventh Amendment . . . governs proceedings in federal court, but not in state court[.]").[8]  The Maine constitution governs civil jury trials in Maine's state courts, and it does not require jury trials "for claims that are equitable in nature," including "matters related to a mortgage foreclosure."  *Kennebec Fed. Sav. & Loan Ass'n v. Kueter*, 1997 ME 123, ¶¶ 4-5, 695 A.2d 1201, 1202.

### 3.      The Anti-Injunction Act

Plaintiff also asserts claims based on certain federal consumer protection statutes.  The Anti-Injunction Act prohibits federal courts from granting "an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.   The Court thus cannot grant Plaintiff the relief that she seeks (i.e., order a new foreclosure trial and enjoin the issuance of the writ of possession) regardless of the theory of recovery.[9]

### 4.      Civil penalties under federal consumer protection statutes

Plaintiff's  Complaint  includes  references  to  various  consumer  protection  statutes. Defendants argue that Plaintiff fails to state a claim.   Plaintiff's claims under the consumer

---

[8] *See also Curtis v. Loether,* 415 U.S. 189, 192 n. 6 (1974) ("The Court has not held that the right to jury trial in civil cases is an element of due process applicable to state courts through the Fourteenth Amendment."); *Walker v. Sauvinet*, 92 U.S. 90, 92 (1875) ("The States, so far as [the Fourteenth Amendment] is concerned, are left to regulate trials in their own courts in their own way.  A trial by jury in suits at common law pending in the State courts is not, therefore, a privilege or immunity of national citizenship, which the States are forbidden by the Fourteenth Amendment to abridge.").

[9] Although a claim pursuant to 42 U.S.C. § 1983 constitutes an exception to the Anti-Injunction Act, *see Casa Marie, Inc. v. Superior Court of P. R. for Dist. of Arecibo*, 988 F.2d 252, 261 (1st Cir. 1993), as above, Plaintiff does not have an actionable due process or equal protection claim present in this case even if she had named an appropriate "state actor" defendant.

protection statutes are all arguably governed by the *Rooker-Feldman* doctrine.  The issue is whether Plaintiff has pled, or might be able to plead, plausible entitlement to relief that would not be governed by the *Rooker-Feldman* doctrine or the Anti-Injunction Act (such as civil penal damages).  Plaintiff requests the opportunity to amend, should the Court identify a curable deficiency in her pleadings.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted."   In its assessment of the motion, the Court must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom." *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)).  To overcome the motion, Plaintiff must establish that her allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claim(s) at issue.  *Id.*  As for Plaintiff's request to amend, a court will grant while leave "freely" when "justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend, however, is appropriately withheld when the proposed amendment would prove futile as a matter of law.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

a.    *Federal Trade Commission Act*

Plaintiff alleges a violation of section 5 of the Federal Trade Commission Act based on a representation that she needed to be 90 days in arrears to qualify for loan modification.  However, "the FTC Act contains no private right of action."  *Liu v. Amerco*, 677 F.3d 489, 492 (1st Cir. 2012).  "The [Federal Trade Commission] Act nowhere purports to confer upon private individuals, either consumers or business competitors, a right of action to enjoin the practices prohibited by the Act or to obtain damages following the commission of such acts.  *Holloway v.*

*Bristol-Myers Corp.*, 485 F.2d 986, 988-89 (D.C. Cir. 1973).  Because the FTC Act does not authorize a private cause of action, Plaintiff cannot maintain a claim under the Act even if the Court determined that the *Rooker-Feldman* doctrine was inapplicable.

> b.       *"Consumers Protection Act"*

Although Plaintiff asserts a claim under the "Consumers Protection Act," Plaintiff presumably intended to allege a claim under the Consumer Credit Protection Act.  Plaintiff alleges that wrongful denial of a loan modification violated the Act and that "robo-signing" and "land record fraud" also violated the Act.  The Consumer Credit Protection Act, Chapter 41 of Title 15, consists of six Subchapters and Regulation Z (the Truth in Lending Regulations).  15 U.S.C. §§ 1601—1693r.  Within the CCPA, the Fair Debt Collection Practices Act (Subchapter V) prohibits false or misleading representations, 15 U.S.C. § 1692e, and the use of unfair or unconscionable means, *id.* § 1692f, designed to collect or attempt to collect a debt.  The Fair Debt Collection Practice Act authorizes private actions to recover actual damages and penalties for noncompliance. *Id.* § 1692k.

Plaintiff has not identified the FDCPA in her pleadings and, therefore, fails to state a claim under that act.  Additionally, Plaintiff's general allegations do not provide a factual basis from which the Court could determine that Defendants qualified as debt collectors subject to the FDCPA with respect to her debt.  Finally, as to Plaintiff's request that the Court grant her leave to amend, the FDCPA imposes a one-year statute of limitation.  *Id.* § 1692k(d).  Plaintiff's allegations all involve events that transpired more than a year prior to her commencement of this action, which would render the proposed amendment futile.

c.      *The Truth In Lending Act*

Plaintiff alleges that she is a victim of predatory subprime lending based on a refinance offer that she accepted in January 2006.  She asserts that the terms violated the Truth in Lending Act (TILA).  Congress enacted TILA "to assure a meaningful disclosure of credit terms" and "to protect the consumer against inaccurate and unfair credit . . . practices." *Palmer v. Champion Mortg.*, 465 F.3d 24, 27 (1st Cir. 2006) (quoting 15 U.S.C. § 1601(a)).  Most commonly, TILA litigation addresses the adequacy of a lender's disclosures regarding the terms of a credit transaction or the right of the debtor to rescind the transaction within certain timeframes.  *See, e.g.*, 15 U.S.C. §§ 1631, 1632, 1635, 1639, 1639d.  In addition to its disclosure requirements, TILA imposes various standards on creditors in the home loan context, including an obligation to make a good faith determination of a borrower's ability to repay a loan and perform appraisals meeting certain standards.  *Id.* §§ 1639c, 1639h.  TILA's civil liability provision permits individuals to sue for damages based on a creditor's failure to comply with "any requirement" of Parts B, D, and E of the Act.  *Id.* § 1640(a).  TILA also provides for liability of assignee creditors.  *Id.* § 1641.  TILA includes a one-year statute of limitation for claims brought pursuant to section 1640.  *Id.* § 1640(e).  Claims involving origination matters or TILA's mortgage requirements are generally subject to a three-year limitation period.  *Id.*  TILA's right of rescission expires three years from the consummation of the transaction.  *Id.* § 1635(f).

Plaintiff bases her TILA claim on the terms of a 2006 refinance.  Based on her allegations, Plaintiff's claim is barred by the applicable limitations periods.  Plaintiff, therefore, fails to state a claim for relief under TILA.

####    d.    *Home Affordable Mortgage Program*

The Home Affordable Mortgage Program was implemented by the Treasury as part of the Troubled Assets Relief Program, through authority delegated to it by Congress under the Emergency Economic Stabilization Act of 2008.  12 U.S.C. §§ 5201 *et seq.*  HAMP's purpose: "to help homeowners avoid foreclosure amidst the sharp decline in the nation's housing market in 2008."  *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 554 (7th Cir. 2012).  However, "nothing express or implied in HAMP gives borrowers a private right of action."  *Nelson v. Bank of Am., N.A.*, 446 Fed. App'x 158, 159 (11th Cir. 2011) (collecting cases); *see also Wigod*, 673 F.3d at 559 n.4. ("[S]ome homeowners [have] tried to assert rights arising under HAMP itself.  Courts have uniformly rejected these claims because HAMP does not create a private federal right of action for borrowers against servicers.").  Plaintiff, therefore, cannot maintain an action under HAMP.

####    5.    **State law claims**

Plaintiff alleges that Countrywide Home Loans, Inc., induced her default by telling her that she had to be 90 days in arrears in order to qualify for loan modification under HAMP, and that Countrywide and Bank of America wrongfully denied her a loan modification under HAMP.[10] (Amended Complaint ¶¶ 7, 9.)  Plaintiff also alleges "Land Record Fraud through robo-signing." (*Id.* ¶ 10.)  She complains of "false court affidavits, pleadings, recording false documents in the York County Registry of Deeds and into court affidavits," causing pecuniary and consequential injury.[11]   (*Id.*)

---

[10]  Some borrowers have relied on HAMP to support state law contract, tort, and consumer-protective statutory claims. *See, e.g., Wigod*, 673 F.3d 547; *Stagikas v. Saxon Mortg. Servs., Inc.*, 795 F. Supp. 2d 129 (D. Mass. 2011).

[11]  The Law Court has not recognized an allegation of "fraud on the court" to be "a ground for the recovery of damages by a party in a later lawsuit."  *Bradbury*, 780 F. Supp. 2d at 112.  Additionally, a claim of fraud requires proof of detrimental reliance.  *Letellier v. Small*, 400 A.2d 371, 376 (Me. 1979).  There is no basis in the allegations from which one could conclude that Plaintiff relied on a false representation concerning an assignment of her mortgage.

Regardless of whether Plaintiff seeks monetary damages or injunctive relief, her remaining state law claims are foreclosed in federal court by the *Rooker-Feldman* doctrine. As Judge Murphy of the Southern District of Illinois explained, "Where Plaintiff seeks specific performance of the alleged contract for loan modification and quiet title, [s]he is unequivocally seeking the same relief denied by the state court." *Mumma v. Wells Fargo Home Mortg.*, No. 3:12-cv-01073, 2013 WL 4761118, at *3 (S.D. Ill. Sept. 4, 2013). Additionally, "[w]here Plaintiff seeks money damages for violation of the state fraud statute, promissory estoppel, and fraudulent and negligent misrepresentation, the question is whether relief on those claims would contradict the state's judgment." *Id.* As Judge Murphy concluded in *Mumma*, the purported independent state law claims "cannot be unwound from the state court's judgment of foreclosure" and remain barred by the *Rooker-Feldman* doctrine. *Id.* Judge Murphy's reasoning is sound, and equally applicable to the facts of this case.

**B.    Plaintiff's Motion for Default and Summary Judgment and Plaintiff's Motion to Reconsider re: Defendant Maria Ramos**

Plaintiff requests that the Court find Defendant Maria Ramos in default and grant summary judgment for an amount in excess of one million dollars.[12] (Motion for Entry of Default as to Maria Ramos, ECF No. 61.) According to the Motion, Maria Ramos notarized an assignment of mortgage dated August 20, 2009, which assignment proved relevant to the foreclosure action. (*Id.* ¶ 5.) Plaintiff asks for an award of $600,000 (three times the amount of the award issued by the Maine District Court on January 3, 2013), plus fees, $500,000 for notary fraud, and punitive damages. (*Id.* at 3.) Plaintiff complains that Ramos's actions contributed toward falsely depriving

---

Similarly, if a registry filing identified the wrong mortgagee, it caused no harm to plaintiff because there would be a mortgage recorded in the Registry in any event. *See also Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 13 (1st Cir. 2014) (finding the plaintiffs' allegations concerning "robo-signed" assignment were "of no moment") (applying Massachusetts law).

[12]  The affidavit of service upon Ms. Ramos is found at docket entry 58.

Plaintiff of her home.  (*Id.*)  A ruling on the motion was deferred until the final hearing.  (ECF No. 63.)  Plaintiff requests reconsideration, asserting that she is seeking summary judgment and not merely entry of default judgment.  (Motion to Reconsider, ECF No. 64.)

"If a default is entered because of the Defendant's failure to plead or otherwise defend, the facts stated in the complaint are taken as true, with the legal import of those facts left for the Court's determination."  *Scarcelli v. Gleichman*, No. 2:12-CV-00072-GZS, 2012 WL 1965681, at *1 (D. Me. May 31, 2012) (citations omitted).  Because Plaintiff's allegations related to robo-signing are within the scope of the matters that are governed by the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction to grant Plaintiff the relief that she seeks.  The recommendation, therefore, is that the Court deny Plaintiff's request for default judgment and/or summary judgment.[13]

## C.    Plaintiff's Motion to Have Defendant Jorge Vargas's Attorney Answer

Defendant Vargas requested a clarification as to why he was sued in the cover letter he filed with his waiver of service (ECF No. 26-1).  Plaintiff then filed a motion to have Mr. Vargas's attorney file papers on Mr. Vargas's behalf.  Because counsel has entered an appearance and filed a motion to dismiss on behalf of Mr. Vargas, Plaintiff's Motion (ECF No. 34) is now moot.

CONCLUSION

Based on the foregoing analysis, and pursuant to 28 U.S.C. § 636(b)(1)(B), the recommendation is that the Court grant Defendants' Motions to Dismiss (ECF Nos. 35 & 42), and deny Plaintiff's Motion for Judgment of Default or Summary Judgment (ECF Nos. 61/64).

In addition, pursuant to 28 U.S.C. § 636(b)(1)(A), Plaintiff's Motions to Find Defendants' Motions to Dismiss are not Responsive Pleadings (ECF Nos. 38 & 43) are considered to be non-

---

[13]  The allegations also fail to state a claim for reasons outlined in footnote 11, *supra*.

dispositive matters and are denied.   Plaintiff's Motion to Have Defendant Vargas's Attorney

Answer (ECF No. 34) is moot.

## NOTICE

Any objection to this Recommended Decision and Order shall be filed in accordance with Fed. R. Civ. P. 72.   With respect to the order on non-dispositive matters, a party may serve and file objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(a).  With respect to the recommendations made herein, a party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. Section 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.  Fed. R. Civ. P. 72(b)(2).  Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 12th day of September, 2014.